**Robert Dale HUGHBANK, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–97–089–CR.**

Court of Appeals of Texas,
Fort Worth.

April 23, 1998.

Danny Burns, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Chuck Mallin, Assistant and Chief of the Appellate Division, John A. Stride, Stuart, Assistants, Fort Worth, for Appellee.

Before CAYCE, C.J., and DAY and HOLMAN, JJ.

## OPINION

CAYCE, Chief Justice.

Robert Dale Hughbank was convicted of official oppression and sentenced to one year in the Tarrant County Jail. In seven points, he contends the trial court erred in admitting evidence in violation of the Texas Rules of Criminal Evidence and in denying his motions for mistrial based upon the State's improper jury arguments. We will affirm.

L.W., a drug dealer, testified that, in September 1993, she left her friend's apartment complex, and after noticing that a police car was following her, pulled over. Appellant was driving the police car and when he got out of his car he asked L.W. for identification. L.W. gave him her driver's license. Appellant then asked L.W. to tell him her current address because the address on her driver's license was wrong. L.W. testified that she gave him another wrong address, but appellant insisted upon the correct address. When she told him she lived at Spanish Meadows, she realized that he already knew where she lived.

During this encounter, L.W. testified that she fanned herself with her t-shirt because it was hot outside, but stopped when appellant told her that it was making him "horny." Without writing L.W. a ticket, appellant let her go and told her to meet him at her home in an hour. When she failed to appear, appellant paged her and ordered her to be at home that evening.

She testified that because she knew appellant would come over that evening, that she had some friends drive her home and stay with her. When appellant arrived, he invited himself in and asked to talk with her in private. They went to her bedroom. Appellant was still wearing his badge, gun, and radio. After searching her room, appellant searched L.W., feeling her breasts, and then made himself comfortable on her bed.

L.W. testified that appellant told her that she needed to be his "friend" or he would make her life miserable by planting cocaine in her car. But that, if she would comply, then he would protect her from the law by giving her advance warning of police action. L.W. asked appellant what "being his friend" meant and appellant replied that he wanted to have sex. L.W. told him she was on her period and appellant left an hour later.

The next day, appellant returned and demanded sex. L.W. testified that she was forced to engage in both oral and vaginal sex. As appellant was leaving, L.W.'s cousin, Tyrone Rollins, was coming to see her and, noticing that something was wrong, asked L.W. what happened. When she told him that appellant sexually assaulted her, Rollins called 911 and an ambulance took L.W. to John Peter Smith Hospital where Dr. Jaime Gutierrez performed a "rape exam" on L.W. and the police interviewed her. Appellant's phone number was still on L.W.'s pager.

On December 23, 1993, a grand jury indicted appellant for official oppression. *See* TEX. PENAL CODE ANN. § 39.03(a)(3) (Vernon 1994). Trial was held on October 29—31, 1996 and a jury found appellant guilty and sentenced him to one year in the Tarrant County Jail.

■ In his first five points, appellant challenges the trial court's admission of certain evidence. As an appellate court, we review the trial court's decision to admit or exclude evidence under an abuse of discretion stan-

dard. *See Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997); *Montgomery v. State,* 810 S.W.2d 372, 379–80 (Tex.Crim.App.1990). Therefore, we will not reverse a trial court if its ruling was within the "zone of reasonable disagreement." *Green,* 934 S.W.2d at 102; *Montgomery,* 810 S.W.2d at 391 (op. on reh'g).

In his first point, appellant contends the trial court erred in admitting Dr. Gutierrez's testimony regarding statements L.W. made to him during the "rape exam." Although appellant concedes that Tex.R.Crim. Evid. 803(4) permits the admission of statements made to a medical practitioner in aid of treatment, he contends that because the district attorney's office contracted with Gutierrez to conduct rape exams, that the examination was for the purpose of collecting evidence for the prosecution, not for providing medical treatment, making the statements unreliable and outside the scope of Rule 803(4). The State contends that the statements were admissible under Rule 803(4) because the statements were provided in response to questions from Gutierrez for the purposes of medical diagnosis or treatment. We agree.

Tex.R.Crim. Evid. 803(4) provides:

### RULE 803. HEARSAY EXCEPTIONS; AVAILABILITY OF DECLARANT IMMATERIAL

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

**(4) Statements for Purposes of Medical Diagnosis or Treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general charac-ter of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

*Id.*

■ Gutierrez testified that he performed a rape exam on L.W. on the evening of the assault. As part of the examination, he examined L.W.'s body for marks, abrasions, or contusions; asked her about the assault and her current medical condition; examined her vaginal canal; and collected samples for the rape kit. Although Gutierrez admitted that he was both providing medical treatment and collecting evidence, he said that the information L.W. provided him during the examination assisted him in diagnosing and treating her. We find, therefore, that L.W.'s statements during the rape examination fell within the scope of Rule 803(4) and were admissible. *See Torres v. State,* 807 S.W.2d 884, 886–87 (Tex.App.—Corpus Christi 1991, pet. ref'd).

Appellant's reliance upon *Cole v. State,* 839 S.W.2d 798 (Tex.Crim.App.1990) is misplaced. In *Cole,* the court of criminal appeals evaluated the admissibility of reports that were not created by "other law enforcement personnel" per se, but could, nevertheless, be excluded as such under Rule 803(8)(B) [1] on the theory that the creator of the report was unavailable to testify and the reports were not shown to be made in a "routine, objective [manner,] . . . with no inherent motivation to distort the results" and in a nonadversarial environment. *Id.* at 807–10 (op. on reh'g). This case is distinguishable because Gutierrez's written report was not admitted into evidence, Gutierrez did testify at trial, there is no evidence that Gutierrez had a motivation to distort the information he recorded, nor is there any evidence that the report or his testimony was based upon anything other than a routine, objective rape examination. We find, therefore, that *Cole* is inapplicable and that the complained-

---

1. Tex.R.Crim. Evid. 803(8)(B) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

**(8) Public Records and Reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth . . . (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding,* however, matters observed by police officers and *other law enforcement personnel* . . . .

*Id.* (emphasis supplied).

of testimony was admissible under Rule 803(4). Appellant's first point is overruled.

In his second and third points, appellant contends the trial court erred in denying his motions for mistrial because the State injected extraneous matters into the trial when it questioned appellant about being "heavily into gambling" and about having "financial difficulties."

Appellant testified on his own behalf. On cross-examination, the State questioned appellant as follows:

Q. Well, Mike he sold a lot of racing forms over there at the American Newsstand, didn't he?

A. Yes, ma'am.

Q. And you bought a lot of racing forms?

A. I bought some.

Q. You were quite *heavily into gambling*, weren't you?

A. No, ma'am.

[DEFENSE COUNSEL]: Your Honor, I object to 401, 403 and 404. [Emphasis supplied.]

 To preserve error for appellate review, a defendant must make a timely objection as soon as the ground for the objection becomes apparent. *See Dinkins v. State*, 894 S.W.2d 330, 355 (Tex.Crim.App.), *cert. denied*, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). When a question clearly calls for an objectionable response, an objection should be lodged *before* the witness responds. *See id.; Girndt v. State*, 623 S.W.2d 930, 934–35 (Tex.Crim.App. [Panel Op.] 1981). Failure to do so waives any error caused by the evidence, unless the defendant can show a legitimate reason to justify the delay. *See Dinkins*, 894 S.W.2d at 355; *Girndt*, 623 S.W.2d at 934–35.

 In the present case, the ground for objection was apparent when the question was asked. Defense counsel offered no explanation, neither at trial nor on appeal, for his failure to object before appellant answered the question. We find, therefore, that error, if any, has been waived. *See Girndt*, 623 S.W.2d at 935. Appellant's second point is overruled.

On cross-examination, the State asked appellant: "Mr. Hughbank, during this time when all this happened to you, you were *having some financial difficulties;* is that right, sir?" [Emphasis supplied.] The court sustained defense counsel's objection and promptly instructed the jury to disregard the State's question; but, denied counsel's motion for mistrial.

 The general rule is that error incurred as a result of an improper question "may be cured or rendered harmless by its withdrawal or an instruction to disregard," unless the question was "clearly calculated to inflame the minds of the jury and is of such a character so as to suggest the impermissibility of withdrawing the impression produced." *Huffman v. State*, 746 S.W.2d 212, 218 (Tex. Crim.App.1988); *Carter v. State*, 614 S.W.2d 821, 824 (Tex.Crim.App. [Panel Op.] 1981). Having considered the record in this case, we find that the instruction to disregard cured any error that may have been caused by the State's improper question. Appellant's third point is overruled.

In his fourth point, appellant contends the trial court erred in allowing the State to question appellant about a prior inconsistent statement "without proof of any such statement being made." The State contends that because appellant's objection on appeal does not comport with his objection at trial that he has waived any error. We agree.

 To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. *See* Tex.R.App. P. 33.1(a)(1); *see also* Tex.R.Crim. Evid. 103(a)(1). The party must either get a ruling from the trial court or object to the trial court's failure to rule. *See* Tex.R.App. P. 33.1(a)(2). If a party fails to do this, error is not preserved and the complaint is waived. *See Taylor v. State*, 939 S.W.2d 148, 155 (Tex.Crim.App.1996). The complaint made on appeal must comport with the complaint made in the trial court, or the error is waived. *See Butler v. State*, 872 S.W.2d 227, 237 (Tex.Crim.App.1994), *cert.*

denied, 513 U.S. 1157, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995); *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990).

On cross-examination, the State questioned appellant about a conversation he had with Richard Wood in which appellant told Wood that L.W. made him feel like a "rape victim." Appellant denied knowing Wood and did not remember making the statement. When the State offered to show appellant the statement, defense counsel objected on the grounds that "[t]his is hearsay and it's extraneous and it's 401, 403 and 404 and it's not permissible." The trial court overruled defense counsel's objections. Appellant now contends that the statement should not have been admitted because the State did not prove that appellant made the statement, and because the State improperly impeached appellant. Because these complaints do not comport with the complaints lodged in the trial court below, we find that nothing has been preserved for our review. *See* TEX. R.APP. P. 33.1; *Martinez v. State,* 867 S.W.2d 30, 40 (Tex.Crim.App.1993), *cert. denied,* 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994); *see also Miranda v. State,* 813 S.W.2d 724, 737 (Tex.App.—San Antonio 1991, pet. ref'd). Appellant's fourth point is overruled.

In his fifth point, appellant contends the trial court erred in permitting the State to cross-examine him about his relationship with Vicki Lynn Bradshaw, an informant.

In Texas, the scope of cross-examination is within the discretion of the trial court and is not limited to the scope of direct examination. *See Wiggins v. State,* 778 S.W.2d 877, 895 (Tex.App.—Dallas 1989, pet. ref'd). Moreover, when defense counsel delves into a matter on direct examination, the State is free to fully develop the same subject matter on cross-examination. *See Pyeatt v. State,* 462 S.W.2d 952, 953 (Tex. Crim.App.1971); *Wiggins,* 778 S.W.2d at 895.

On direct examination, appellant testified that he arrested Bradshaw in 1993 and that because "she felt grateful for the way she was treated" that she became an informant for him. By testifying about their relationship on direct examination, we find that

appellant "opened the door" for cross-examination regarding this subject matter. Appellant's fifth point is overruled.

In his sixth and seventh points, appellant contends the trial court erred in denying his motion for mistrial based upon the State's improper jury argument. During closing argument of the guilt/innocence phase of the trial, the State argued:

[Appellant] knew he had sex over there and he knew he had ejaculated and there was a possibility that some semen might be found somewhere, where on the sheets, you know, who knows.

And so he covers it if he can. Just a little bit. By giving this, well, you know, she put her hands inside his pants and he wipes himself off with a washcloth. So he leaves that there thinking he's being clever.

But, you know, he was stuck with that statement. Because when it came out that there was DNA in her panties and when it came out that there was DNA in her vagina, that statement doesn't work anymore. It doesn't jive. It flies in the face of common sense. It is illogical.

But I submit to you that [defense counsel] did all [he] could do when defending a man who's guilty of such a crime.... Well, he got up here and he tried to kind of poke around at the DNA. And I don't know. You heard [the experts].... *These people have been schooled in this. DNA is a science that's been around for a very, very long time. It's been tested by the smartest brains in the world. It is a valid science.* [Emphasis supplied.]

The trial court sustained defense counsel's timely objection and instructed the jury to disregard the State's comments; however, it overruled appellant's motion for mistrial.

In its closing arguments during the penalty phase, the State argued:

Is it any wonder that [L.W.] feels disenfranchised? Is it any wonder that [L.W.] wasn't even going to report this?

*He was the law. He's the law. She wasn't even going to tell anybody. That's the way she thinks about the police. They just control everything. There is no law*

*when a police officer's out raping people.* [Emphasis supplied.]

Once again, the trial court sustained defense counsel's objection to the State's usage of the term "raping" and instructed the jury to disregard the State's comment; but, denied appellant's motion for mistrial.

 The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *See Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Crim. App. [Panel Op.] 1980); *Faulkner v. State,* 940 S.W.2d 308, 311 (Tex.App.—Fort Worth 1997, pet. ref'd) (en banc op. on reh'g). To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *See Felder v. State,* 848 S.W.2d 85, 94–95 (Tex.Crim.App.1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex. Crim.App.1973). Alleged argument error must be viewed in the context of the entire argument, keeping in mind the evidence presented and that isolated sentences taken out of context may take on meaning different than that understood by the jury. *See Henson v. State,* 683 S.W.2d 702, 704 (Tex.Crim. App.1984). An instruction to disregard improper jury argument is generally sufficient to cure error. *See Dinkins,* 894 S.W.2d at 357; *Faulkner,* 940 S.W.2d at 312.

Having reviewed the State's closing arguments, we find that the instruction to disregard cured the harm, if any, caused by the State's improper comments. Appellant's sixth and seventh points are overruled.

The judgment of the trial court is affirmed.