COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-165-CR

 

 

WILLIAM CLAUDE MEAD                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellant William Claude Mead
appeals his conviction and five-year sentences for indecency with a child by
exposure and indecency with a child by contact. 
In three points, appellant asserts that the trial court erred by
permitting the State to offer outcry testimony when he had improper notice of
this testimony, that the trial court erred by overruling his objection to the
hearsay testimony of E. Araceli Desmarais, and that the evidence was factually
insufficient to support the jury=s findings that he fondled the child and showed the child his
genitals.  We affirm.      

II.  Background Facts

Kenneth S. lived with his
wife, Tammy, and his sons, K.S., D.S., and M.S., in Joshua, Texas when
appellant first moved next door to them.[2]  The family lived next door to appellant for
approximately one and one-half years, and during this time, Kenneth and
appellant became best friends who barbecued together and Ahung out@ regularly.

Appellant later bought a
house in Meadowbrook, an area in Fort Worth, and moved there.  Kenneth=s family moved into appellant=s house for approximately six weeks while Kenneth saved money for his
own house.  While living with appellant,
the family shared one bedroom, and appellant had his own bedroom.  D.S., who was ten years old when the family
lived in appellant=s home,
spent a lot of time with appellant.  








At trial, D.S. testified that
appellant acted inappropriately on one occasion while Kenneth=s family was still living at appellant=s home.  While D.S.=s siblings and parents were gone, D.S. got out of the shower and
walked into his family=s bedroom
with a towel wrapped around his waist. 
When D.S. tried to put on boxer shorts that were too small, appellant
walked over from the door and said, ALet me help you.@  Appellant reached down, and while pulling up
D.S.=s boxer shorts, allowed his thumb to Aswish@ across D.S.=s Aprivate.@ After appellant pulled up D.S.=s boxers, he Aswished@ across D.S.=s Aprivate@ a second
time and said, A[I]t gets hard
around girls.@

Even after Kenneth=s family moved out, appellant continued to see D.S.  He often gave gifts to D.S. and took D.S. to
movies, auto races, and to Oklahoma.[3]  D.S. and K.S., who was eight, also spent the
night at appellant=s house
occasionally. 

On December 11, 2004, D.S.
stayed the night at appellant=s house.[4]  D.S. testified that during this time,
appellant stripped down naked, got on the pool table, and danced after losing a
game of strip pool.  D.S., who was only
wearing boxer shorts, tried not to look, but saw appellant=s Aprivate
part.@  K.S., who was also with them,
danced on the pool table with appellant briefly. 








The next day, appellant
bought D.S. a video game.  While D.S. was
trying to Afigure out
how to work@ the game,
appellant picked him up and set him on his lap. 
Several times when D.S. was not looking, appellant moved his hand up
D.S.=s leg.  When appellant touched
D.S.=s Aprivates,@ D.S. tried to get away.  He was
unable to do so, however, because appellant grabbed him.  D.S. screamed, and appellant eventually let
him call his father.  

When D.S. called his father,
D.S. sounded Aupset@ and Ascared,@ so Kenneth said he would pick him up. 
However, appellant ultimately gave D.S. a ride.  After he got home, D.S. told Kenneth that
appellant Agrabbed him
in the nutsack@ and made
K.S. get on top of a pool table and dance naked.[5]  Kenneth immediately called the Forth Worth
Police Department and took the children to get rape tests.

Subsequently, on November 2,
2005, the State indicted appellant for indecent touching of and exposure to
D.S., a child.  A jury found appellant
guilty of both counts and assessed his punishment at five years= confinement for each count; the judge ordered the sentences to be
served concurrently.  This appeal
followed.

 








 

III.  Factual Sufficiency

In his first point, appellant
asserts that the evidence is factually insufficient to support the jury=s finding that he fondled D.S.=s genitals or exposed himself to D.S.[6]  We disagree. 

A. Standard of Review








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d 417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

 

B. Applicable Law

A person commits indecency
with a child if, with a child younger than seventeen and not the person=s spouse, the person engages in sexual contact with the child, or with
intent to arouse or gratify the sexual desire of any person, exposes any part
of the person=s genitals,
knowing the child is present.  Tex. Penal Code Ann. ' 21.11(a)(1), (2)(A) (Vernon 2003). 
ASexual contact@ means any
touching by a person of a child=s genitals, including through clothing, with the intent to arouse or
gratify the sexual desire in any person.  Id. ' 21.11(c); see Santos v. State, 961 S.W.2d 304, 308 (Tex. App.CHouston [1st Dist.] 1997, pet. ref=d).    

C. Analysis

Appellant does not dispute
that he had a close relationship with D.S., but instead argues that D.S. was
not a credible witness and that the children made up the stories because of a
money dispute between him and Kenneth. 








On December 11, 2004, D.S.
and his younger brother K.S. spent the night at appellant=s home.  The next day, D.S.
called his father and sounded upset. 
When he got home, D.S. told his father that appellant had Agrabbed him in the nutsack@ and made K.S. dance naked on a pool table.  He also told his father that on another
occasion, he had fallen asleep on the couch but woken up in appellant=s bed. 

At trial, D.S. did not
mention that he had ever woken up in appellant=s bed.  D.S. did testify,
however, that he and K.S. played a game of strip pool with appellant and that
he saw appellant dance naked on the pool table after appellant lost the
game.

K.S. testified that he played
strip pool with both appellant and D.S., but that appellant only stripped down
to his underwear when he danced on the table. 
K.S. also testified that he had never seen appellant=s penis and that he had never seen appellant touch D.S. or
himself.  K.S. stated that he had never
been apart from D.S. while in appellant=s home.

E. Araceli Desmarais, a
registered nurse at Cook Children=s Hospital, who is certified to conduct sexual abuse examinations,
testified that D.S. told her that appellant had exposed himself during a game
of strip pool.  D.S. also told Desmarais
that appellant touched D.S.=s penis over his clothes while playing a video game.








D.S. testified that during
the same weekend as the strip pool incident, appellant touched his leg and
grabbed his Aprivate@ area while he was playing a video game.  D.S. also testified that appellant touched
his penis twice while he and his family lived with appellant.  D.S. claimed the touching happened while he
was alone with appellant at appellant=s home and was trying to pull up a pair of boxer shorts.  Kenneth, however, testified that D.S. was
never alone with appellant at appellant=s home while the family was living there.

Cross-examination revealed
that D.S. originally told personnel within the District Attorney=s Office that appellant had never touched him in a sexual manner.  Appellant argues that D.S.=s testimony is not credible because he changed his story several
times.  Robert Jenkins, appellant=s roommate at the time that D.S. and K.S. visited appellant=s house, testified that appellant=s interactions with children were always proper.  Jenkins stated that D.S. had a bad reputation
for being untruthful, and that he and appellant once told D.S. and K.S. about a
time that they got drunk and danced naked on a pool table.  Jenkins believed that the children simply
made up the strip pool story using facts from the story that he and appellant
told them.  Jenkins also stated that
appellant had never been naked in front of any children.  During cross-examination, however, Jenkins
admitted to knowing of an allegation that J.I., another child, had woken up
while on appellant=s couch with
wetness around his anal area.








Appellant testified that he
acted as a big brother to many children, including D.S. and K.S., who were not
treated well by their own parents. 
Appellant denied any misconduct with the children and stated his belief
that the children had made up the story because of a debt that Kenneth owed to
appellant from when the family lived with him. 
Appellant admitted, however, that in December 2004, he and Kenneth were
friends again because the debt was no longer a Amajor issue.@

Detective Sherry Kelly was
the police officer who interviewed appellant after D.S. made the outcry.  Detective Kelly testified that during the
interview, appellant told him his belief that the children made up the story
about the strip pool incident after hearing his and Jenkins=s strip pool story.  Appellant
also told Detective Kelly about the debt between him and Kenneth. 

Appellant correctly points
out that D.S.=s testimony
conflicted with K.S.=s and
Kenneth=s testimonies on some points. 
Further, D.S. contradicted himself several times between the initial
outcry and trial.  However, D.S. consistently
stated that he was involved in a strip pool game with appellant, that appellant
touched his Aprivate@ while he was playing a video game, and that appellant touched his Aprivate@ twice when
he was trying to pull up his boxer shorts. 
Further, after being reminded during trial that he must tell the truth,
D.S. admitted to seeing appellant=s penis after the strip pool game. 









Equally important, it is up
to the fact finder to reconcile contradictory testimonial evidence because
resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and [the]
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  After viewing all of the evidence in
a neutral light, we hold that the evidence is factually sufficient to support
the jury=s finding that appellant showed D.S. his penis and touched D.S.=s genitals with the intent to arouse or gratify his own sexual
desire.  See Watson, 204 S.W.3d at
414-15, 417; Johnson, 23 S.W.3d at 11. 
Accordingly, we overrule appellant=s first point.  

IV.  Notice of Outcry

In his second point, appellant complains that the trial
court abused its discretion by admitting Kenneth=s testimony, the
alleged outcry witness, because the State provided insufficient notice of the
evidence.  Specifically, appellant
complains that the written summary of the outcry statement, which stated that
he made contact with a female sexual organ as opposed to a male sexual
organ, failed to adequately place him on notice of the content and scope of the
outcry testimony as required by the statute.  See Tex.
Code Crim. Proc. Ann. art. 38.072 (Vernon 2005). 








Article 38.072 creates a statutory
exception to the general rule excluding hearsay evidence for a child abuse
victim=s initial outcry
statement made to the first person eighteen years of age or older, other than
the defendant, to whom the child made a statement about the offense.  See id. ' 2(2).  Before the outcry statement is admissible,
however, several requirements must be satisfied.  First, the party intending to offer the
statement must notify the adverse party, on or before the fourteenth day before
the proceedings begin, (1) of its intention to do so, (2) with the name of the
witness through whom it intends to offer the statement, and (3) with a written
summary of the statement.  Id. ' 2(b)(1)(A), (B),
(C).  Second, the trial court must
determine, in a hearing conducted outside the presence of the jury, that the
statement is reliable based on the time, content, and circumstances of the
statement.  Id. ' 2(b)(2).  Finally, the child must testify or be
available to testify at the proceeding in court or in any other manner provided
by law.  Id. ' 2(b)(3).   We review the trial court=s decision to
admit or exclude a hearsay statement that may fall within the article 38.072
hearsay or outcry exception under an abuse of discretion standard.  See Garcia v. State, 792 S.W.2d 88, 92
(Tex. Crim. App. 1990); Smith v. State, 131 S.W.3d 928, 931 (Tex. App.CEastland 2004,
pet. ref=d).  As stated by the court of criminal appeals in
Garcia, Aa trial court has broad discretion in
determining the admissibility of such evidence. 
The exercise of that discretion will not be disturbed unless a clear
abuse of discretion is established by the record.@  792 S.W.2d at 92.








D.S. told Kenneth that appellant had touched D.S.=s penis and
exposed himself.  The first page of the
State=s Notice of Outcry
Statement reads as follows: 

In summary, the victim [D.S.] told [Kenneth] and [Tammy],
individuals over 18 years of age, that the defendant touched her
inappropriately.  In summary, [D.S.] told
[Kenneth] and [Tammy] that the defendant touched her vaginal area with his hand
and exposed himself to her as well as induce[d] her to dance naked for
Defendant.  Also, [D.S.] was twelve years
of age or younger when she made the abovementioned outcry statements to Barbra
Bell. 

 

Appellant argues that because the notice
stated that he touched a female sexual organ and exposed himself to a female,
the notice did not comply with article 38.072. 
See Tex. Code Crim. Proc.
Ann. art. 38.072.  The prosecutor
acknowledged this mistake, and when appellant=s trial counsel
objected to the notice, the prosecutor who signed it apologized.  Although the first page of the notice
contained gender errors, the notice clearly revealed that the alleged victim
was D.S.  Moreover, at the same time they
provided the misprinted notice, the State also gave appellant a detailed
summary of the outcry testimony through a statement handwritten by
Kenneth.  Kenneth=s statement
revealed who was making the claim and what the claim was; it revealed D.S.=s claims that
appellant grabbed his Anut sack@ and made K.S.
dance on a pool table naked.








The record also shows that the trial court
reprimanded the State for the first part of the notice, but then found that
appellant received proper notice because of Kenneth=s handwritten
statement, which was attached to the first part of the notice.  The trial court stated:

And so, fortunately, the part of you that was inattentive
got offset by the side that was extra cautious and just attached the statement
so there=s no doubt.  And so there=s no harm, no foul.  You gave, actually, more notice than the law
required by attaching the statement, which pulls you out of this one, and also
shows that the Defendant=s rights of notice have been
protected by attaching the original statement which need not have been provided
in trial until that witness testified.

 

The purpose of the notice requirement
contained in article 38.072 is to prevent the defendant from being surprised by
the introduction of the outcry hearsay testimony.  Gay v. State, 981 S.W.2d 864, 866 (Tex.
App.CHouston [1st
Dist.] 1998, pet. ref=d). 
To achieve this purpose, the written summary must give the defendant
adequate notice of the content and scope of the outcry testimony.  Davidson v. State, 80 S.W.3d 132, 136
(Tex. App.CTexarkana 2002, pet. ref=d); Gay,
981 S.W.2d at 866.  It is sufficient if
it reasonably informs the defendant of the essential facts related in the
outcry statement.  Davidson, 80
S.W.3d at 136.








After reviewing the record, we conclude that Kenneth=s attached
statement contained the essential facts necessary to provide appellant with
timely notice of the content and scope of the outcry testimony.  See Davidson, 80 S.W.3d at 135-37; see
also Martin v. State, 823 S.W.2d 391, 394 (Tex. App.CTexarkana), pet.
ref=d, 830 S.W.2d 137 (Tex. 1992) (holding that
notice of outcry was sufficient even though the typed notice did not contain
the victim=s name because the victim=s handwritten
statement was attached).  Accordingly, we
hold that the trial court did not abuse its discretion when it admitted Kenneth=s testimony of
D.S.=s outcry.  We overrule appellant=s second point.

V.  Desmarais=s Testimony

In his third
point, appellant argues that the trial court abused its discretion by
overruling his objection to the admission of 
Desmarais=s testimony
regarding statements D.S made to her. 
Specifically, appellant claims that Desmarais provided hearsay testimony
that was not elicited for a medical purpose. 

Desmarais
testified that she was a nurse at Cook Children=s Medical Center who regularly examines patients who have been, or
claim to have been, sexually abused. 
Desmarais testified that, as part of her sexual abuse examination, she
elicits a patient=s social and
sexual abuse history.  She gathers this
history for the purposes of treatment and diagnosis and to determine whether
she needs to refer a patient to a counselor. 








Desmarais
examined D.S. and K.S. immediately after D.S.=s outcry statement to Kenneth. 
Desmarais testified that, during this examination, she asked D.S. if
anyone had touched him.  Appellant
objected, stating that the testimony was hearsay.[7]

During an
extensive hearing outside the presence of the jury, Desmarais explained that it
was necessary for D.S.=s treatment
and diagnosis to determine if appellant had sexually abused him.  Desmarais explained that, to determine if she
needed to refer D.S. to psychological counseling, it was necessary for her to
know whether appellant played strip pool with the children for his own sexual
arousal, whether appellant exposed himself to D.S., and whether appellant
touched D.S.  The trial court sustained
all of appellant=s objections
regarding D.S.=s statements
about K.S., but overruled the objections regarding whether appellant had
touched D.S. and exposed himself to D.S. 
The trial court also allowed a discussion of the strip pool game on the
ground that the disrobing would make little sense without context.








Rule 803(4)
of the Texas Rules of Evidence provides an exception to the hearsay rule for
statements made for the purposes of medical diagnosis or treatment.  Tex.
R. Evid. 803(4); Hughbank v. State, 967 S.W.2d 940, 943 (Tex.
App.CFort Worth 1998, no pet.); see Beheler v. State, 3 S.W.3d 182,
190 (Tex. App.CFort Worth
1999, pet. ref=d)
(Dauphinot, J., concurring) (noting that facts that add context to outcry
statements are useful, and often admissible). 
The mere fact that a sexual assault examiner might be engaged in the
dual role of collecting evidence and providing medical service does not
automatically render statements made during the course of the examination
inadmissible.  See Hughbank, 967
S.W.2d at 943; Torres v. State, 807 S.W.2d 884, 886-87 (Tex. App.CCorpus Christi 1991, pet. ref=d).  A trial court=s decision to admit evidence is reviewed under an abuse of discretion
standard.  See Torres v. State, 71
S.W.3d 758, 760 (Tex. Crim. App. 2002).  








Here, the
trial court properly admitted the hearsay testimony.  Desmarais provided a detailed explanation of
her sexual assault questioning procedures, and explained why it was medically
necessary to ask D.S. questions about his sexual history to diagnose him for
medical treatment.  Such questions from a
medical examiner and answers from a sexual assault victim are hearsay
statements that are admissible under rule 803(4).  See Tex.
R. Evid. 803(4); Wilder v. State, 111 S.W.3d 249, 255 (Tex. App.CTexarkana 2003, pet. ref=d); Hughbank, 967 S.W.2d at 943; Torres, 807 S.W.2d at
886-87.  The trial court did not abuse
its discretion in admitting Desmarais=s testimony.  Accordingly, we
overrule appellant=s third
point.    

VI.  Conclusion

Having
overruled appellant=s three
points, we affirm the trial court=s judgment.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL F:    LIVINGSTON, GARDNER, and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: May 17, 2007











[1]See Tex. R. App. P. 47.4.





[2]It is
unclear from the record what exact dates the family resided in Joshua, Texas,
and when appellant moved next door. 





[3]It is
unclear from the record why appellant took D.S. to Oklahoma.





[4]K.S.
also stayed at appellant=s
house long enough to play strip pool. 
However, it is unclear from the record whether K.S. stayed
overnight.  The Smith family had moved
out of appellant=s
house by this point.  





[5]D.S.
did not initially tell his father that appellant danced on the pool table
naked.





[6]Appellant
provides practically no argument why the evidence was factually insufficient;
in his brief, he simply relays the facts presented at trial.  If a party provides no argument or legal
authority to support its position, the appellate court may properly overrule
the issue or point as inadequately briefed. 
See Tex. R. App. P.
38.1(h); Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), cert.
denied, 532 U.S. 1053 (2001); Jackson v. State, 50 S.W.3d 579, 591
n.1 (Tex. App.CFort
Worth 2001, pet. ref=d).  While we could overrule this point based on
inadequate briefing, in the interest of justice, we address it.    





[7]In
his brief, appellant contends that the AState admitted that this >history= (the
child complainant=s
statement) was not obtained for any medical purpose.@  On the contrary, the State admitted that only
one statement by D.S., Awe
were playing Spy Hunter,@ was
not obtained for the purposes of treatment and diagnosis.