MEAD V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-165-CR

WILLIAM CLAUDE MEAD APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant William Claude Mead appeals his conviction and five-year sentences for indecency with a child by exposure and indecency with a child by contact.  In three points, appellant asserts that the trial court erred by permitting the State to offer outcry testimony when he had improper notice of this testimony, that the trial court erred by overruling his objection to the hearsay testimony of E. Araceli Desmarais, and that the evidence was factually insufficient to support the jury’s findings that he fondled the child and showed the child his genitals.  We affirm.      

II.  Background Facts

Kenneth S. lived with his wife, Tammy, and his sons, K.S., D.S., and M.S., in Joshua, Texas when appellant first moved next door to them.
(footnote: 2)  The family lived next door to appellant for approximately one and one-half years, and during this time, Kenneth and appellant became best friends who barbecued together and “hung out” regularly.

Appellant later bought a house in Meadowbrook, an area in Fort Worth, and moved there.  Kenneth’s family moved into appellant’s house for approximately six weeks while Kenneth saved money for his own house.  While living with appellant, the family shared one bedroom, and appellant had his own bedroom.  D.S., who was ten years old when the family lived in appellant’s home, spent a lot of time with appellant.  

At trial, D.S. testified that appellant acted inappropriately on one occasion while Kenneth’s family was still living at appellant’s home.  While D.S.’s siblings and parents were gone, D.S. got out of the shower and walked into his family’s bedroom with a towel wrapped around his waist.  When D.S. tried to put on boxer shorts that were too small, appellant walked over from the door and said, “Let me help you.”  Appellant reached down, and while pulling up D.S.’s boxer shorts, allowed his thumb to “swish” across D.S.’s “private.” After appellant pulled up D.S.’s boxers, he “swished” across D.S.’s “private” a second time and said, “[I]t gets hard around girls.”

Even after Kenneth’s family moved out, appellant continued to see D.S.  He often gave gifts to D.S. and took D.S. to movies, auto races, and to Oklahoma.
(footnote: 3)  D.S. and K.S., who was eight, also spent the night at appellant’s house occasionally. 

On December 11, 2004, D.S. stayed the night at appellant’s house.
(footnote: 4)  D.S. testified that during this time, appellant stripped down naked, got on the pool table, and danced after losing a game of strip pool.  D.S., who was only wearing boxer shorts, tried not to look, but saw appellant’s “private part.”  K.S., who was also with them, danced on the pool table with appellant briefly. 

The next day, appellant bought D.S. a video game.  While D.S. was trying to “figure out how to work” the game, appellant picked him up and set him on his lap.  Several times when D.S. was not looking, appellant moved his hand up D.S.’s leg.  When appellant touched D.S.’s “privates,” D.S. tried to get away.  He was unable to do so, however, because appellant grabbed him.  D.S. screamed, and appellant eventually let him call his father.  

When D.S. called his father, D.S. sounded “upset” and “scared,” so Kenneth said he would pick him up.  However, appellant ultimately gave D.S. a ride.  After he got home, D.S. told Kenneth that appellant “grabbed him in the nutsack” and made K.S. get on top of a pool table and dance naked.
(footnote: 5)  Kenneth immediately called the Forth Worth Police Department and took the children to get rape tests.

Subsequently, on November 2, 2005, the State indicted appellant for indecent touching of and exposure to D.S., a child.  A jury found appellant guilty of both counts and assessed his punishment at five years’ confinement for each count; the judge ordered the sentences to be served concurrently.  This appeal followed.

III.  Factual Sufficiency

In his first point, appellant asserts that the evidence is factually insufficient to support the jury’s finding that he fondled D.S.’s genitals or exposed himself to D.S.
(footnote: 6)  We disagree. 

A. Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
Watson
, 204 S.W.3d at 414-15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict
.  
Watson
, 204 S.W.3d 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court “harbor a subjective level of reasonable doubt to overturn [the] conviction.”
 
 Id
.  We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury’s resolution of a conflict in the evidence.  
Id
.  We may not simply substitute our judgment for the fact-finder’s.  
Johnson
, 23 S.W.3d at 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a different result is appropriate, we must defer to the jury’s determination of the weight to be given contradictory testimonial evidence because resolution of the conflict “often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.”  
Johnson
, 23 S.W.3d at 8.  Thus, we must give due deference to the fact-finder’s determinations, “particularly those determinations concerning the weight and credibility of the evidence.”  
Id
. at 9.

B. Applicable Law

A person commits indecency with a child if, with a child younger than seventeen and not the person’s spouse, the person engages in sexual contact with the child, or with intent to arouse or gratify the sexual desire of any person, exposes any part of the person’s genitals, knowing the child is present.  
Tex. Penal Code Ann.
 § 21.11(a)(1), (2)(A) (Vernon 2003)
.  
“Sexual contact” means any touching by a person of a child’s genitals, including through clothing, with the intent to arouse or gratify the sexual desire in any person. 
 Id
.
 
§
 21.11(c)
; see Santos v. State
, 961 S.W.2d 304, 308 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d).
 

C. Analysis

Appellant does not dispute that he had a close relationship with D.S., but instead argues that D.S. was not a credible witness and that the children made up the stories because of a money dispute between him and Kenneth. 

On December 11, 2004, D.S. and his younger brother K.S. spent the night at appellant’s home.  The next day, D.S. called his father and sounded upset.  When he got home, D.S. told his father that appellant had “grabbed him in the nutsack” and made K.S. dance naked on a pool table.  He also told his father that on another occasion, he had fallen asleep on the couch but woken up in appellant’s bed. 

At trial, D.S. did not mention that he had ever woken up in appellant’s bed.  D.S. did testify, however, that he and K.S. played a game of strip pool with appellant and that he saw 
appellant 
dance naked on the pool table after appellant lost the game.

K.S. testified that he played strip pool with both appellant and D.S., but that appellant only stripped down to his underwear when he danced on the table.  K.S. also testified that he had never seen appellant’s penis and that he had never seen appellant touch D.S. or himself.  K.S. stated that he had never been apart from D.S. while in appellant’s home.

E. Araceli Desmarais, a registered nurse at Cook Children’s Hospital, who is certified to conduct sexual abuse examinations, testified that D.S. told her that appellant had exposed himself during a game of strip pool.  D.S. also told Desmarais that appellant touched D.S.’s penis over his clothes while playing a video game.

D.S. testified that during the same weekend as the strip pool incident, appellant touched his leg and grabbed his “private” area while he was playing a video game.  D.S. also testified that appellant touched his penis twice while he and his family lived with appellant.  D.S. claimed the touching happened while he was alone with appellant at appellant’s home and was trying to pull up a pair of boxer shorts.  Kenneth, however, testified that D.S. was never alone with appellant at appellant’s home while the family was living there.

Cross-examination revealed that D.S. originally told personnel within the District Attorney’s Office that appellant had never touched him in a sexual manner.  Appellant argues that D.S.’s testimony is not credible because he changed his story several times.  Robert Jenkins, appellant’s roommate at the time that D.S. and K.S. visited appellant’s house, testified that appellant’s interactions with children were always proper.  Jenkins stated that D.S. had a bad reputation for being untruthful, and that he and appellant once told D.S. and K.S. about a time that they got drunk and danced naked on a pool table.  Jenkins believed that the children simply made up the strip pool story using facts from the story that he and appellant told them.  Jenkins also stated that appellant had never been naked in front of any children.  During cross-examination, however, Jenkins admitted to knowing of an allegation that J.I., another child, had woken up while on appellant’s couch with wetness around his anal area.

Appellant testified that he acted as a big brother to many children, including D.S. and K.S., who were not treated well by their own parents.  Appellant denied any misconduct with the children and stated his belief that the children had made up the story because of a debt that Kenneth owed to appellant from when the family lived with him.  Appellant admitted, however, that in December 2004, he and Kenneth were friends again because the debt was no longer a “major issue.”

Detective Sherry Kelly was the police officer who interviewed appellant after D.S. made the outcry.  Detective Kelly testified that during the interview, appellant told him his belief that the children made up the story about the strip pool incident after hearing his and Jenkins’s strip pool story.  Appellant also told Detective Kelly about the debt between him and Kenneth. 

Appellant correctly points out that 
D.S.’s testimony conflicted with K.S.’s and Kenneth’s testimonies on some points.  
Further, D.S. contradicted himself several times 
between the initial outcry and trial.  However, D.S. consistently stated that he was involved in a strip pool game with appellant, that appellant touched his “private” while he was playing a video game, and that appellant touched his “private” twice when he was trying to pull up his boxer shorts.  Further, after being reminded during trial that he must tell the truth, D.S. admitted to seeing appellant’s penis after the strip pool game.  

Equally important, it is up to the fact finder to reconcile contradictory testimonial evidence because resolution of the conflict “often turns on an evaluation of credibility and demeanor, and [the] jurors were in attendance when the testimony was delivered.”  
Johnson
, 23 S.W.3d at 8. 
 
After viewing all of the evidence in a neutral light, we hold that the evidence is factually sufficient to support the jury’s finding that appellant 
showed D.S. his penis and touched D.S.’s genitals with the intent to arouse or gratify his own sexual desire. 
 
See Watson
, 204 S.W.3d at 414-15, 417; 
Johnson
, 23 S.W.3d at 11. 
 Accordingly, we overrule appellant’s first point.  

IV.  Notice of Outcry

In his second point, appellant complains that the trial court abused its discretion by admitting Kenneth’s testimony, the alleged outcry witness, because the State provided insufficient notice of the evidence.  Specifically, appellant complains that the written summary of the outcry statement, which stated that he made contact with a 
female 
sexual organ as opposed to a 
male 
sexual organ, failed to adequately place him on notice of the content and scope of the outcry testimony as required by the statute. 
 See
 
Tex. Code Crim. Proc. Ann.
 art. 38.072 (Vernon 2005). 

Article 38.072 creates a statutory exception to the general rule excluding hearsay evidence for a child abuse victim’s initial outcry statement made to the first person eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. 
 See id.
 § 2(2).  Before the outcry statement is admissible, however, several requirements must be satisfied.  First, the party intending to offer the statement must notify the adverse party, on or before the fourteenth day before the proceedings begin, (1) of its intention to do so, (2) with the name of the witness through whom it intends to offer the statement, and (3) with a written summary of the statement. 
 Id.
 § 2(b)(1)(A), (B), (C).  Second, the trial court must determine, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement. 
 Id.
 § 2(b)(2).  Finally, the child must testify or be available to testify at the proceeding in court or in any other manner provided by law. 
 Id.
 § 2(b)(3).
 We review the trial court’s decision to admit or exclude a hearsay statement that may fall within the article 38.072 hearsay or outcry exception under an abuse of discretion standard. 
 See Garcia v. State,
 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); 
Smith v. State,
 131 S.W.3d 928, 931 (Tex. App.—Eastland 2004, pet. ref’d).  As stated by the court of criminal appeals in 
Garcia,
 “a trial court has broad discretion in determining the admissibility of such evidence.  The exercise of that discretion will not be disturbed unless a clear abuse of discretion is established by the record.”  792 S.W.2d at 92.

D.S. told Kenneth that appellant had touched D.S.’s penis and exposed himself.  The first page of the State’s Notice of Outcry Statement reads as follows: 

In summary, the victim [D.S.] told [Kenneth] and [Tammy], individuals over 18 years of age, that the defendant touched her inappropriately.  In summary, [D.S.] told [Kenneth] and [Tammy] that the defendant touched her vaginal area with his hand and exposed himself to her as well as induce[d] her to dance naked for Defendant.  Also, [D.S.] was twelve years of age or younger when she made the abovementioned outcry statements to Barbra Bell. 

Appellant argues that because the notice stated that he touched a female sexual organ and exposed himself to a female, the notice did not comply with article 38.072
.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 38.072.  
The prosecutor acknowledged this mistake, and when appellant’s trial counsel objected to the notice, the prosecutor who signed it apologized.  Although the first page of the notice contained gender errors, the notice clearly revealed that the alleged victim was D.S.  Moreover, at the same time they provided the misprinted notice, the State also gave appellant a detailed summary of the outcry testimony through a statement handwritten by Kenneth.  Kenneth’s statement revealed who was making the claim and what the claim was; it revealed D.S.’s claims that appellant grabbed his “nut sack” and made K.S. dance on a pool table naked.

The record also shows that the trial court reprimanded the State for the first part of the notice, but then found that appellant received proper notice because of Kenneth’s handwritten statement, which was attached to the first part of the notice.  The trial court stated:

And so, fortunately, the part of you that was inattentive got offset by the side that was extra cautious and just attached the statement so there’s no doubt.  And so there’s no harm, no foul.  You gave, actually, more notice than the law required by attaching the statement, which pulls you out of this one, and also shows that the Defendant’s rights of notice have been protected by attaching the original statement which need not have been provided in trial until that witness testified.

The purpose of the notice requirement contained in article 38.072 is to prevent the defendant from being surprised by the introduction of the outcry hearsay testimony. 
 Gay v. State,
 981 S.W.2d 864, 866 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d).  To achieve this purpose, the written summary must give the defendant adequate notice of the content and scope of the outcry testimony.  
Davidson v. State,
 80 S.W.3d 132, 136 (Tex. App.—Texarkana 2002, pet. ref’d); 
Gay
, 981 S.W.2d at 866.  It is sufficient if it reasonably informs the defendant of the essential facts related in the outcry statement. 
 Davidson,
 80 S.W.3d at 136.

After reviewing the record, we conclude that Kenneth’s attached statement contained the essential facts necessary to provide appellant with timely notice of the content and scope of the outcry testimony. 
 See Davidson,
 80 S.W.3d at 135-37; 
see also Martin v. State
, 823 S.W.2d 391, 394 (Tex. App.—Texarkana), 
pet. ref’d
, 830 S.W.2d 137 (Tex. 1992) (holding that notice of outcry was sufficient even though the typed notice did not contain the victim’s name because the victim’s handwritten statement was attached). 
 Accordingly, we hold that the trial court did not abuse its discretion when it admitted Kenneth’s testimony of D.S.’s outcry.  We overrule appellant’s second point.

V.  Desmarais’s Testimony

In his third point, appellant argues that the trial court abused its discretion by overruling his objection to the admission of  Desmarais’s testimony regarding statements D.S made to her.  Specifically, appellant claims that Desmarais provided hearsay testimony that was not elicited for a medical purpose. 

Desmarais testified that she was a nurse at Cook Children’s Medical Center who regularly examines patients who have been, or claim to have been, sexually abused.  Desmarais testified that, as part of her sexual abuse examination, she elicits a patient’s social and sexual abuse history.  She gathers this history for the purposes of treatment and diagnosis and to determine whether she needs to refer a patient to a counselor. 

Desmarais examined D.S. and K.S. immediately after D.S.’s outcry statement to Kenneth.  Desmarais testified that, during this examination, she asked D.S. if anyone had touched him.  Appellant objected, stating that the testimony was hearsay.
(footnote: 7)
 During an extensive hearing outside the presence of the jury, Desmarais explained that it was necessary for D.S.’s treatment and diagnosis to determine if appellant had sexually abused him.  Desmarais explained that, to determine if she needed to refer D.S. to psychological counseling, it was necessary for her to know whether appellant played strip pool with the children for his own sexual arousal, whether appellant exposed himself to D.S., and whether appellant touched D.S.  The trial court sustained all of appellant’s objections regarding D.S.’s statements about K.S., but overruled the objections regarding whether appellant had touched D.S. and exposed himself to D.S.  The trial court also allowed a discussion of the strip pool game on the ground that the disrobing would make little sense without context.

Rule 803(4) of the Texas Rules of Evidence provides an exception to the hearsay rule for statements made for the purposes of medical diagnosis or treatment.  
Tex. R. Evid.
 803(4); 
Hughbank v. State
, 967 S.W.2d 940, 943 (Tex. App.—Fort Worth 1998, no pet.); 
see Beheler v. State
, 3 S.W.3d 182, 190 (Tex. App.—Fort Worth 1999, pet. ref’d) (Dauphinot, J., concurring) (noting that facts that add context to outcry statements are useful, and often admissible).  The mere fact that a sexual assault examiner might be engaged in the dual role of collecting evidence and providing medical service does not automatically render statements made during the course of the examination inadmissible.  
See Hughbank
, 967 S.W.2d at 943; 
Torres v. State
, 807 S.W.2d 884, 886-87 (Tex. App.—Corpus Christi 1991, pet. ref’d).  A trial court’s decision to admit evidence is reviewed under an abuse of discretion standard.  
See Torres v. State
, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  

Here, the trial court properly admitted the hearsay testimony.  Desmarais provided a detailed explanation of her sexual assault questioning procedures, and explained why it was medically necessary to ask D.S. questions about his sexual history to diagnose him for medical treatment.  Such questions from a medical examiner and answers from a sexual assault victim are hearsay statements that are admissible under rule 803(4).  
See
 
Tex. R. Evid.
 803(4); 
Wilder v. State
, 111 S.W.3d 249, 255 (Tex. App.—Texarkana 2003, pet. ref’d); 
Hughbank
, 967 S.W.2d at 943; 
Torres
, 807 S.W.2d at 886-87.  The trial court did not abuse its discretion in admitting Desmarais’s testimony.  Accordingly, we overrule appellant’s third point.    

VI.  Conclusion

Having overruled appellant’s three points, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL F: LIVINGSTON, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: May 17, 2007

FOOTNOTES
1:
See
 
Tex. R. App
. P. 47.4.

2:
It is unclear from the record what exact dates the family resided in Joshua, Texas, and when appellant moved next door. 

3:
It is unclear from the record why appellant took D.S. to Oklahoma.

4:
K.S. also stayed at appellant’s house long enough to play strip pool.  However, it is unclear from the record whether K.S. stayed overnight.  The Smith family had moved out of appellant’s house by this point.  

5:
D.S. did not initially tell his father that appellant danced on the pool table naked.

6:
Appellant provides practically no argument why the evidence was factually insufficient; in his brief, he simply relays the facts presented at trial.  If a party provides no argument or legal authority to support its position, the appellate court may properly overrule the issue or point as inadequately briefed.  
See 
Tex. R. App. P.
 38.1(h); 
Tong v. State
, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), 
cert. denied
, 532 U.S. 1053 (2001); 
Jackson v. State
, 50 S.W.3d 579, 591 n.1 (Tex. App.—Fort Worth 2001, pet. ref’d).  While we could overrule this point based on inadequate briefing, in the interest of justice, we address it.    

7:
In his brief, appellant contends that the “State admitted that this ‘history’ (the child complainant’s statement) was not obtained for any medical purpose.”  On the contrary, the State admitted that only one statement by D.S., “we were playing Spy Hunter,” was not obtained for the purposes of treatment and diagnosis.