NO. 07-05-0304-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 31, 2007
_____

BENITO RODRIGUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 31ST DISTRICT COURT OF HEMPHILL COUNTY;

NO. 2623; HONORABLE STEVEN EMMERT, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

Appellant Benito Rodriguez presents two points challenging evidentiary rulings in his trial for aggravated sexual assault. Agreeing the challenged evidence was improperly admitted but finding its admission does not present reversible error, we affirm the trial court's judgment.

A November 2004 indictment containing one count alleged appellant sexually assaulted his daughter Anita on March 9, 2000, and "did then and there by acts or words threaten to cause or place, Anita . . . in fear that serious bodily injury would be imminently

inflicted on [her.]" The undisputed evidence showed that in March 2000 appellant's daughter was twenty-two years old and lived at her parents' home. She worked at a preschool but did not drive and was taken to and from work by appellant. With the help of co-workers Anita moved out of her parents' home in March 2000. She participated in counseling with counselor Danina Kennedy from May through October 2000 and later obtained additional counseling through her church.

Trial began on Monday July 25, 2005. On July 22, the Friday before trial, the prosecution referred Anita to Sonya Higgins, also a licensed professional counselor. They met for two hours. Higgins was the State's first witness when trial began on Monday.

Both of appellant's points of error challenge the admission of testimony from Higgins relating Anita's statements about appellant's sexual abuse of her from the time she was eighteen years old until she moved out of the home. Appellant's first point complains the evidence was admitted in violation of the rule against hearsay. Tex. R. Evid. 802. The State contends the statements were admissible under the exception for statements made for purposes of medical diagnosis or treatment. Tex. R. Evid. 803(4).

We review a trial court's admission or exclusion of evidence for abuse of discretion. *Cunningham v. State*, 877 S.W.2d 310, 313 (Tex.Crim.App. 1994). Under that standard, we should not reverse a trial court if its ruling was within the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 101-02 (Tex.Crim.App. 1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997).

2

Higgins described her meeting with Anita as "a clinical interview and mental status exam." When the State asked Higgins what Anita told Higgins, the trial court sustained appellant's hearsay objection. The State sought to show the hearsay testimony fell within the exception for statements made for medical diagnosis or treatment by asking Higgins if she had "a recommendation as to any further treatment for her" based on the meeting. On receiving a positive response, the prosecutor again asked what Anita told Higgins. The defense repeated its hearsay objection leading to a discussion outside the presence of the jury, which primarily focused on whether the underlying events were extraneous "crimes, wrongs or acts" under Rule 404(b). With regard to appellant's hearsay objection, the State argued Higgins "made notes with regards [sic] to any future treatment[.]" At the conclusion of that discussion, the trial court overruled appellant's objections. The trial court sustained a subsequent hearsay objection to Higgins' testimony, but when the State again later argued the testimony was admissible under Rule 803(4), the trial court overruled appellant's objection and Higgins testified to Anita's statements that appellant sexually abused her over a four-year period. It is this testimony on which appellant's complaints are based.

Appellant argues the admission of hearsay testimony by Higgins was error because her testimony established the statements made to her were not made for the purpose of medical diagnosis or treatment but only in preparation for trial.[1] Texas courts applying the

---

[1] The State initially responds that appellant waived his appellate complaints by failing to object timely when the same evidence was introduced during the victim's testimony. It points to Anita's testimony that "the sexual offense" began when she was eighteen years old. We do not agree that appellant's objection to the testimony was untimely. The relevant portion of the reporter's record reveals this exchange during Anita's

exception for hearsay statements established by Rule of Evidence 803(4) have held the presence of a parallel law enforcement purpose does not preclude application of the exception. *See Barnes v. State,* 165 S.W.3d 75, 82 (Tex.App.--Austin 2005, no pet.); *Torres v. State*, 807 S.W.2d 884, 887 (Tex.App.--Corpus Christi 1991, pet. ref'd)*; Hughbank,* 967 S.W.2d at 943. Our courts have not found the exception applicable,

testimony:

> Prosecutor: Okay. Now, at some point in time, the sexual offense began; is that correct?
>
> A: Yes.
>
> Q: And approximately how old were you?
>
> A: 18.
>
> Defense counsel: I'd have to - I'd like to renew my extraneous [offense] objection at this time, your honor, the one we've made in limines and have had many arguments about, I'd like to make it now.
>
> The court: If counsel would approach.
>
> The court: You're not going to have her talk about other sexual relations are you, specifically?
>
> Prosecutor: I'm going to talk about the specific instances, the first time that it happened.
>
> The court: Is that the one indicted for?
>
> Prosecutor: No. Your honor, - -
>
> The court: That's dangerous.

The trial court sustained the objection. The objection was timely because the prosecutor's inquiry about when "the sexual offense" began could have referred to the offense for which appellant was being tried. *See Hughbank v. State,* 967 S.W.2d 940, 944 (Tex.App.--Fort Worth 1990, no pet.) (objection required as soon as ground for objection becomes apparent).

however, when there is no evidence the hearsay statements were made with a purpose of obtaining medical care. *See Garcia v. State*, 126 S.W.3d 921, 927 (Tex.Crim.App. 2004) (exception inapplicable when no evidence showed victim was seeking medical treatment); *Barnes,* 165 S.W.3d at 82 (pediatrician gathering evidence but also "conducting legitimate medical examination"); *Hughbank,* 967 S.W.2d at 943 (physician conducting "rape exam" admittedly both providing medical treatment and collecting evidence but testified information from victim's statements assisted in diagnosing and treating her). *See also Perez v. State*, 113 S.W.3d 819, 830 (Tex.App.–Austin 2003, pet. ref'd) (statements to counselor inadmissible because, *inter alia*, no evidence child victim "was aware of seeing [counselor] for the purpose of medical treatment and that her statements were for the purpose of treatment." (citation omitted)); *Burns v. State*, 122 S.W.3d 434, 438 (Tex.App.–Houston [1st Dist.] 2003, pet ref'd) (noting Rule 803(4) exception is based on assumption patient understands importance of being truthful with medical personnel to receive accurate diagnosis and treatment) (citing *Beheler v. State*, 3 S.W.3d 182, 188 (Tex.App.–Fort Worth 1999, pet ref'd).

Here, we can find no evidence Anita went to Higgins or made statements to her seeking medical diagnosis or treatment.[2] Higgins testified unequivocally Anita was not a patient. She said Anita had been referred by the district attorney's office "in preparation

---

[2] This case does not involve a contention that statements made to a licensed professional counselor like Higgins are outside the scope of Rule 803(4), and we need not express an opinion on that question here. *Cf. Perez*, 113 S.W.3d at 830 (statements made to licensed professional counselor not working under supervision of medical professional were not made for purpose of medical diagnosis or treatment) *with Wilder v. State*, 111 S.W.3d 249, 256 (Tex.App.–Texarkana 2003, pet ref'd) (finding statements made to licensed professional counselor admissible under Rule 803(4)).

for this hearing." As noted, Higgins' single two-hour session with Anita occurred on the Friday before trial began on Monday. The prosecutor's attempt to bring the statements within Rule 803(4) by asking Higgins on the stand if she had a recommendation for treatment fails because Higgins' positive response does not show Anita made the challenged statements for the purpose of diagnosis or treatment. Evidence that a witness would have provided medical services if requested is inadequate to show the declarant's purpose to obtain medical treatment. *Garcia*, 126 S.W.3d at 927. When asked if she had received any counseling, Anita recited three months of counseling after leaving her parents' home, counseling from Danina Kennedy, and later counseling through her church. She made no reference to her interview with Higgins. Seeing no evidence the hearsay statements were made with a purpose of obtaining medical care, we find the trial court abused its discretion by admitting hearsay testimony by Higgins.

Appellant's second point contends Higgins' testimony was evidence of extraneous offenses and should have been excluded because the State failed to give notice of its intent to use those offenses as required by Rule of Evidence 404(b). Our conclusion the trial court should have sustained appellant's hearsay objection to Higgins' testimony makes consideration of his second point unnecessary. We turn to the question of harm.

To determine if the admission of Higgins' testimony requires reversal, we will apply the standard for nonconstitutional errors set out in Rule of Appellate Procedure 44.2(b). *See Bagheri v. State*, 119 S.W.3d 755, 762-63 (Tex.Crim.App. 2003) (applying 44.2(b) standard to erroneous admission of evidence); *Potier v. State*, 68 S.W.3d 657, 663 (Tex.Crim.App. 2002) (erroneous evidentiary rulings rarely constitutional error). That

6

standard requires us to disregard any error which does not affect a substantial right. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). If, conversely, after examining the record as a whole, we have "fair assurance that the error did not influence the jury, or had but a slight effect," the erroneous admission of evidence did not affect a substantial right. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).

To assess the likelihood that the jury's decision was adversely affected by the erroneous admission of Higgins' testimony, we consider the entire record, including the other evidence admitted, the nature of the evidence supporting the verdict, and the character of the error in light of the other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 357-58 (Tex.Crim.App. 2002) (evaluating harm from erroneously admitted evidence). We also consider the arguments of counsel and the extent to which the State emphasized the improper evidence. *Id*. at 357; *Morales v. State*, 32 S.W.3d 862, 867 (Tex.Crim.App. 2000).

Here, we find the character of the error, considered in the context of other evidence before the jury, to be an important factor. The hearsay testimony was Higgins' recitation of what Anita told her during their interview three days before, concerning appellant's four-year history of sexual assaults on Anita. She said Anita related that appellant first sexually assaulted her through forced sexual intercourse when she was eighteen, and after that he

7

did so with increasing frequency to the point that he eventually sexually assaulted his daughter "daily," except when she was ill or menstruating.

The trial court sustained appellant's objections to questions seeking to elicit testimony from Anita about this history of sexual offenses against her, and sustained his objections to the same questions addressed to counselor Kennedy. Higgins thus provided the only testimony about the frequent sexual assaults occurring during the four-year period before the indicted offense. This testimony, coming from the State's first witness, certainly set the stage for Anita's description of the assault for which appellant was indicted. But Higgins simply was telling the jury what Anita told her. From our review of the entirety of the testimony, we conclude that Anita's credibility before the jury was the critical element of the State's case. The jury heard direct testimony about the indicted offense only from Anita, and if the jury did not believe her testimony, we find it unlikely they would believe she nonetheless was truthful when she told Higgins three days before that appellant assaulted her many times.

The State also points to other evidence of appellant's sexual misconduct toward Anita occurring over a period of years, and argues that evidence diminished the effect of the trial court's error. As previously noted, before appellant voiced an objection, Anita responded with "18" to questioning asking how old she was when "the sexual offense began."[3] The State also notes that appellant does not complain on appeal about testimony that appellant touched Anita's breast or pubic area inappropriately during her teenage

_____

[3] Although appellant objected immediately after Anita's response, the response nonetheless was before the jury.

8

years, put his hand under her shirt while they were lying on the couch watching television, once looked up Anita's shorts while she was changing a lightbulb and sometimes swatted her "on the butt." Anita testified some of these actions "didn't feel right." She also testified to statements by appellant that he would "never do it again."[4] The State contends this testimony, when compared with Higgins' inadmissible hearsay testimony of four years of frequent sexual assaults, is "the same or similar evidence," admitted at trial without objection, making admission of Higgins' testimony harmless.[5] We cannot agree with this contention by the State, but we find the evidence that appellant's sexual misconduct toward Anita occurred over a period of time diminished somewhat the effect of the trial court's error.

At the time of trial, Anita was twenty-seven. During her testimony, she described her father's controlling, abusive and violent actions toward her and her siblings while they lived at home. By the time of the indicted offense in March 2000, she was the only child living with her parents. She testified to her fear of her father, and to the depression and lack of self-esteem she felt. She told the jury that appellant once fractured her arm when she "told him that if he didn't stop what he was doing, that I was going to go to my mother." With respect to the events of March 9, 2000, she testified "actually that night was the last

---

[4] In response to an objection, the State argued this testimony did not violate the trial court's previous ruling on extraneous offenses because Anita was there referring to physical, not sexual, abuse. In its context, we find the jury easily could have considered Anita to be referring there to appellant's sexual assaults of her. No appellate issue is presented regarding testimony from any witness but Higgins.

[5] *See Perez,* 113 S.W.3d at 831 (improper admission of evidence not reversible error when same facts proved by other properly admitted evidence), citing *Brooks v. State*, 990 S.W.2d 278, 287 (Tex.Crim.App. 1999).

night he ever did anything to me." She described, in narrative fashion, that she and appellant were alone after her mother went to work that evening. She and appellant had argued during supper over his suspicions she was planning to move from the home. They later continued to argue, with appellant accusing Anita of sleeping with other men. She then described how he grabbed her arm, picked her up and took her to the back room where, despite her struggling, crying, and telling him to stop, he "raped me."[6] Afterward, she testified, she could not stop crying, and appellant "told me to be quiet, stop acting like a baby and to go get cleaned up." As noted, shortly thereafter, with the help of co-workers, she moved out of her parents' home.

Testifying further, Anita described her life since moving from her parents' home, and said she reported appellant's actions in August 2004. Asked why it took her so long to make a report, she responded, "Because I wasn't strong enough to deal with it. When I left home I blocked a lot of this out thinking that it would go away and it didn't. No matter what I did, it never went away, and it affected my life."

Appellant's cross-examination of Anita focused on her relationship with her father during the years after she moved from her parents' home, seeking to show her lack of fear of him. Appellant introduced several family photographs showing Anita with appellant, and appellant with Anita's daughter.[7]

---

[6] Asked specifically what appellant did, she said, "He . . . stuck his penis in my vagina, he raped me and then he pulled out right before he came."

[7] Except for the introduction of the photographs, appellant's case was presented only through cross-examination.

10

Among other witnesses, the State also presented the testimony of Anita's co-workers who related their observations of appellant's unusual behavior toward Anita while she worked at the preschool, her apparent fear of him, their concerns for Anita's welfare, their offers to help Anita move out of her parents' home, and events surrounding her move.

Anita's testimony, if found credible, amply supported the jury's guilty verdict. The State did not emphasize Higgins' testimony in closing argument, but emphasized the evidence supporting the indicted offense. Considering the nature of Higgins' testimony in the context of all of the evidence before the jury, we conclude that it did not have a substantial and injurious effect or influence in determining the jury's guilty verdict.

Review of the record compels the same conclusion with regard to the effect of Higgins' testimony on the jury's decision to assess the maximum sentence of ninety-nine years. Anita testified again during the punishment phase, relating to the jury a history of sexual assaults at the hands of her father, beginning at the age of 18 or 19 and continuing through the March 2000 indicted offense. With regard to the punishment phase of trial, this presentation of the same evidence as that improperly presented earlier through Higgins' testimony rendered the trial court's error harmless. *Perez*, 133 S.W.3d at 831. Moreover, Anita's oldest sister Margarita testified that appellant sexually abused her, beginning with digital penetration of her vagina when she was eight and advancing to forced sexual intercourse when she was ten. Margarita and their youngest sister Mary also told of an occasion on which Mary witnessed appellant's sexual intercourse with Margarita, when

11

Margarita was fifteen.[8] Anita's sisters, and her two brothers, also testified to the physical abuse appellant inflicted on them and their mother. Evidence was presented that the two youngest children were removed from the home because of appellant's abuse. Having considered the entire record, we conclude the trial court's erroneous admission of Higgins' testimony had no substantial effect on the jury's verdict on punishment.

Accordingly, we find the error of which appellant complains did not affect his substantial rights and must be disregarded. Tex. R. App. P. 44.2(b); *King*, 953 S.W.2d at 271. His points of error are overruled, and the judgment is affirmed.

James T. Campbell
Justice

Quinn, C.J., concurring as to result.

Publish.

---

[8] Mary's testimony indicates appellant was unaware that she was witnessing his assault of Margarita.