Opinion filed May 14, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00283-CR
_____

**JOE LOUIS TIENDA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 428th District Court**
**Hays County, Texas**
**Trial Court Cause No. 07-802**

## CONCURRING AND DISSENTING OPINION

I concur with the majority that the audio recording of S.D.'s responses, in a seven-minute excerpt of a police interview, was inadmissible as an excited utterance. I also concur with the majority's other holdings, except I respectfully disagree that the error in the admission of S.D.'s responses from the audiotape excerpt was harmful.

### I. *Discussion and Analysis*

The error in the admission of S.D.'s responses on the audio recording excerpt is nonconstitutional error under Rule 44.2(b), which requires us to disregard any

error that does not affect a substantial right.[1]  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  If, after examining the record as a whole, we have "fair assurance that the error did not influence the jury, or had but a slight effect," we are not to overturn the conviction.  *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *see Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011).

### A.  Factors to Consider

"In making a harm analysis, we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence."  *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010) (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); *Miles v. State*, 918 S.W.2d 511, 517 (Tex. Crim. App. 1996)); *see also Motilla v. State*, 78 S.W.3d 352, 357–58 (Tex. Crim. App. 2002).  Factors to consider in our analysis include:

(1)   voir dire, if applicable;
(2)   the State's theory and any defensive theories;
(3)   any physical evidence admitted for the jury's consideration;
(4)   any testimony admitted for the jury's consideration;
(5)   the nature of the evidence supporting the verdict;
(6)   the character of the alleged error and how it might be considered in connection with other evidence in the case;
(7)   the jury instructions;
(8)   closing arguments; and
(9)   whether the State emphasized the error.

*See Motilla*, 78 S.W.3d at 355–56; *Morales*, 32 S.W.3d at 867.  We also consider "overwhelming evidence of guilt."  *Motilla*, 78 S.W.3d at 356.

---

[1]TEX. R. APP. P. 44.2(b).

### 1. *Factors One, Two, Three, and Seven*

For factor one, S.D.'s responses were not mentioned in voir dire. With respect to factor three, because of the nature of the allegations of the offenses, there was no physical evidence. For factor seven, S.D.'s responses were not referenced in the jury instructions. As to the second factor, the State's theory was that S.D. was telling the truth; that Nurse Jordan and Detective Johnson believed S.D.; and that Detective Johnson, after he completed his investigation, thought S.D.'s mother also believed S.D. but had told S.D. not to tell anyone. The State argued that S.D. was pressured to minimize the conduct of Appellant because of the financial support he provided her and her mother. The State also highlighted the beliefs and actions of S.D.'s mother in response to Appellant's admission that he had had inappropriate sexual conduct with S.D.

In contrast, defense counsel argued that, although Appellant played around and roughhoused with S.D. and did get on top of her in her bedroom, he did not act with any intent to arouse or sexually gratify himself. The theory of the defense was that S.D. was a rebellious teenager who did not like her mother's rules and did not like the restrictions placed on her use of a cell phone and computer. Defense counsel argued that S.D. was an impressionable girl who made a terrible decision when she fabricated allegations against Appellant and whose lies had come back to haunt her.

### 2. *Factors Four, Five, Six, and Evidence of Guilt*

Factors four, five, and six examine the testimony adduced at trial, the nature of that evidence to support the jury's verdict, and the character of the error as it is compared to the other evidence at trial. *Motilla*, 78 S.W.3d at 355–56. An additional factor is overwhelming evidence of guilt. *Id.* S.D.'s responses on the audiotape were important, but S.D. testified at trial and was subject to cross-examination; the State also questioned her mother extensively. In *Rodriguez v. State*, the Amarillo court held that the erroneous admission of hearsay testimony from a licensed

professional counselor about what the adult victim had told her, three days prior to trial, about the prior sexual abuse by the defendant was harmless. *Rodriguez v. State*, 280 S.W.3d 288, 289, 291–93 (Tex. App.—Amarillo 2007, no pet.). In *Rodriguez*, the court held that the counselor's testimony was inadmissible but that, since the critical issue was the victim's credibility and the counselor's testimony merely corroborated the victim's testimony, the counselor's testimony did not have a substantial or injurious effect or influence on the jury. *Id.* at 293–94.

S.D.'s responses in the audiotape, like the counselor's description of what the victim in *Rodriguez* had said, corroborated her story, but S.D. also testified at trial. S.D. testified that, when she was sixteen, Appellant got on top of her while she was lying on her stomach in her bed and touched and rubbed his penis against her buttocks, through their clothing, and moved up and down against her. S.D. said that she felt his weight on her, that it was not an accident, and that his penis was "hard."

The State also adduced evidence from Detective Johnson and Nurse Jordan. During his investigation, Detective Johnson received a CPS report and interviewed S.D.; he also spoke to Nurse Jordan, who said she believed S.D. Detective Johnson collected all of this information and testified that he believed S.D. was truthful. Defense counsel did not object to Detective Johnson's testimony when he said that he thought S.D. was truthful and believed she was pressured to minimize Appellant's conduct, which he thought happened more often than S.D. described.[2] And, although S.D. said at trial that she could only remember one instance in which Appellant lay on top of her, she also said that Appellant had lain on the bed with her more than

---

[2]The improper admission of evidence is not reversible error when substantially the same facts are proven by unobjected-to testimony. *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); *Anderson v. State*, 717 S.W.2d 622, 626–27 (Tex. Crim. App. 1986); *Hitt v. State*, 53 S.W.3d 697, 708 (Tex. App.—Austin 2001, pet. ref'd); *Miranda v. State*, 813 S.W.2d 724, 739 (Tex. App.—San Antonio 1991, pet. ref'd). Thus, overruling an objection to evidence will not generally result in reversal when the same facts are received without objection, either before or after the complained-of ruling and regardless of whether the other evidence was introduced by the defendant or the State. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

once and hugged her. She also said she had told the police the truth when she described Appellant's abuse. In addition, Nurse Jordan believed S.D. when S.D. described what Appellant had done:

> [S.D.] retreated to her bedroom, [Appellant] followed her into the bedroom, he laid down in the bed next to her, he rubbed his pelvis and genital area on her, he laid on top of her. When he was doing that, she could feel his erect penis, it made her frightened and uncomfortable. She asked him to stop, she asked him to leave her alone.

Moreover, although S.D.'s mother blamed S.D., she knew of S.D.'s allegations before S.D.'s outcry and had told a family member that Appellant had molested S.D.; she also had sent S.D. to live with a relative and had put a lock on S.D.'s bedroom door before S.D. returned home. All of this evidence supported the verdict of the jury.

### 3. *Factors Eight and Nine*

Factors eight and nine focus on the closing arguments and the State's emphasis of the error. *Motilla*, 78 S.W.3d at 355–56. In *Taylor v. State*, the Court of Criminal Appeals held that the error in the admission of hearsay during testimony from a therapist that had counseled the victim was harmless. *Taylor v. State*, 268 S.W.3d 571, 593–94 (Tex. Crim. App. 2008). In *Taylor*, the thirteen-year-old victim had been raped by "Skinny Man," an acquaintance of the victim's mother, in return for the mother's receipt of drugs from Skinny Man. *Id.* at 573–75. At trial, over objection by defense counsel, the therapist testified about the victim's description of the assault; the victim also testified about the assault.[3] *Id.* at 575–78. Although the therapist's testimony was inadmissible, the error was harmless where the State

---

[3]The only other witness was a police officer who testified that the victim had identified Skinny Man. *Taylor*, 268 S.W.3d at 577 n.12. The therapist's testimony was the only corroboration of the victim's account and was discussed in closing argument. *Id.* at 593–94.

focused on the victim's testimony and the fact that the victim had recounted the same story to several state agencies and law enforcement.[4] *Id.* at 592–93.

Both the State and the defense mentioned S.D.'s responses during closing arguments. The jury also asked to hear the excerpt of S.D.'s responses again during deliberations. The State argued that the jury should "protect" and "stand up" for S.D., "do right" by her, and do "something about it." The State argued that it had proved all of the elements of each offense beyond a reasonable doubt from the testimony of S.D., Nurse Jordan, Detective Johnson, and S.D.'s mother. The State argued that S.D.'s mother pressured S.D. to minimize Appellant's behavior because of his financial support of them.

Defense counsel advocated, in closing, that S.D. was a liar because S.D. was an impressionable and rebellious teenager who did not like being bugged by her parents and because Appellant's acts were just "wrestling" and "horseplay." Defense counsel emphasized the testimony of S.D.'s aunt, claimed S.D. had misspoken in the police interview, and argued that the district attorney's office had pressured or influenced S.D., but defense counsel did not object when the State mentioned S.D.'s responses in closing arguments.

Detective Johnson and Nurse Jordan corroborated S.D.'s story, and both testified that she was truthful and consistent in her abuse allegations. Although the State mentioned S.D.'s responses three times during its closing argument, the majority of the State's closing argument focused on S.D.'s description of Appellant's abuse, and the State requested that the jury ignore the "blame the victim" mentality of S.D.'s mother and the pressure put on S.D. by her mother to minimize Appellant's conduct. The State also focused on the jury's obligation to hold Appellant accountable and protect S.D. and the community.

---

[4]The court agreed with the concurring opinion from the appellate court that the therapist's testimony had but a slight effect on the jury. *Id.* at 592–94.

## II. *Conclusion*

Factors one, three, and seven had no effect or influence on the jury. The second factor also did not have any substantial or injurious effect on Appellant's rights. Similarly, factors four through six show the evidence not only supported the verdict of the jury but militated against any substantial or injurious influence, given the testimony of S.D., Nurse Jordan, and Detective Johnson. In addition, the testimony of S.D.'s mother, about her beliefs and her actions, after she confronted Appellant with some of S.D.'s allegations, supported the verdict. Finally, with respect to factors eight and nine, the State mentioned S.D.'s responses three times in its closing, and the jury listened to the tape during deliberations; however, Detective Johnson and Nurse Jordan corroborated S.D.'s testimony, and the State referred to S.D.'s mother's testimony as the "most compelling" evidence. In light of the entire record, there is fair assurance that the error did not affect Appellant's substantial rights in that the error did not have a substantial or injurious effect or influence on the verdict of the jury, or had but a slight effect. TEX. R. APP. P. 44.2(b); *Barshaw*, 342 S.W.3d at 93–94; *Johnson*, 967 S.W.2d at 417.

I agree with the majority that the admission of the seven-minute audio recording of S.D.'s responses to Detective Johnson's interview questions was erroneous. But I would affirm the judgment of the trial court because the error was harmless. Thus, I respectfully dissent as to the majority's reversal and remand of the case, but I concur with the remainder of the majority's opinion.


May 14, 2015                                          MIKE WILLSON

Publish. *See* TEX. R. APP. P. 47.2(b).               JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

7